IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| KENNETH J. KONIAS JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-01530-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| PA DEPARTMENT OF CORRECTIONS, | ) | |
| DONALD COLLINGS, LAWRENCE B. | ) | |
| LEWIS, BETH RUDZIENSKI, DEBRA A. | ) | |
| HAWKINBERRY, MARK V. CAPOZZA, | ) | |
| FRANK SALVAY, JOHN E. WETZEL, | ) | |
| LOIS ALLEN, | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM OPINION[1]**

CYNTHIA REED EDDY, Chief United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff initiated this action against the Pennsylvania Department of Corrections ("DOC") and a number of its officials (collectively "Corrections Defendants") alleging several civil rights and Americans with Disability Act claims based upon Plaintiff's inability to submit urine for a drug test which Plaintiff claims he is unable to do so because he suffers from Paruesis or Shy Bladder Syndrome while in DOC custody at State Corrections Institution at Fayette ("SCI Fayette").

Presently pending before the court is a motion to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (ECF No. 41).  The motion is fully briefed and ripe

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

for disposition. (ECF Nos. 42, 49).  Jurisdiction is proper under 28 U.S.C. § 1331.  For the reasons

that follow, Corrections Defendants motion to dismiss is granted in part and denied in part.

## II.    BACKGROUND

At the outset, Plaintiff's amended complaint is presented in a narrative and conclusory

fashion, fails to include specific dates that the alleged conduct occurred and fails to include

particularized allegations with respect to the conduct of each Defendant.  While pro se litigants are

afforded leniency in drafting pleadings, this leniency does not excuse a Plaintiff from alleging

enough facts to support his claims and the court will construe his amended complaint to do

substantial justice. *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted).

DOC inmates must undergo periodic urinary drug tests.  Plaintiff is an inmate of SCI

Fayette and alleges that he suffers from Paruresis or Shy Bladder Syndrome related to anxiety

which makes it difficult for him to urinate in the presence of others.  Plaintiff alleges that he

informed unspecified Defendants of his condition and they refuse to acknowledge it.  Plaintiff also

alleges that he was diagnosed with PTSD in 2017 and takes medication for depression and anxiety.

He claims that he has no difficulty producing urine samples when given sufficient time and water

and has historically provided clean urine tests while in DOC custody when not under pressure.  He

also claims that he was not offered alternative testing such as blood work or hair sampling even

though he offered to pay for alternative testing.  He claims that Defendants only gave him two

hours to submit a urine sample which he could not produce and as a consequence he was given a

misconduct for refusing to obey an order, was placed in the Restricted Housing Unit ("RHU") and

after a second offense, he was prohibited from receiving contact visits.  He claims that he pleaded

guilty to at least one of the misconducts, but alleges he would not have if he knew he would be

prohibited from receiving contact visits as a consequence and Corrections Defendants acted

unconstitutionally when they did not inform him about the sanctions for pleading guilty to his misconduct.  While Plaintiff claims that he appealed his misconducts, his appeal was denied.  He also alleges that one appeal was never received by the Program Review Committee ("PRC") and this violates Plaintiff's due process rights and DOC policy.  He also alleges that he was not permitted to call any witnesses at his misconduct hearings.  He further claims that he was unable to appeal another misconduct because the sanction he received was imposed after the time to appeal had expired.

Plaintiff asserts claims under the First, Eighth and Fourteenth Amendments under 42 U.S.C. § 1983, the American with Disabilities Act ("ADA") and argues that many of the DOC policies were violated.

### III.    STANDARD OF REVIEW

A pro se pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). As a result, a pro se complaint under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston*, 363 F.3d at 234 (citations omitted).  While pro se litigants are afforded this leniency, they "do not have a right to general legal advice from judges," and "courts need not provide substantive legal advice to pro se litigants" because pro se litigants must be treated "the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245, 58 V.I. 691 (3d Cir. 2013).

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well settled. Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6)

provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556).  Yet the court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Although a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp.*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and "sufficient to state a claim for relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 555.  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 556).

The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atlantic Corp.*, 550 U.S. at 556) (internal citations omitted).

When considering a Rule 12(b)(6) motion, the court's role is limited to determining whether a plaintiff has a right to offer evidence in support of his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). The court does not consider whether a plaintiff will ultimately prevail. *Id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

As a general rule, if a court "consider[s] matters extraneous to the pleadings" on a motion for judgment on the pleadings, the motion must be converted into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Even so, a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents integral to or explicitly relied on in the complaint, even if they are not attached , without converting the motion into one for summary judgment. *Mele v. Fed. Rsrv. Bank of New York*, 359 F.3d 251, 256 (3d Cir. 2004) n. 5 (3d Cir. 2004); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## IV.   DISCUSSION

Corrections Defendants move to dismiss Plaintiff's claims on a number of grounds including: (1) Plaintiff fails to state a claim under the ADA; (2) he fails to state a Fourteenth Amendment due process claim; (3) he fails to state an Eighth Amendment claim; and (4) there is

no recognized cause of action for violations of DOC regulations or policy.

      a.  <u>ADA</u>

Plaintiff alleges that Corrections Defendants violated the ADA when they refused to provide alternative testing to accommodate Plaintiff's disability.

Corrections Defendants argue that the ADA does not apply to the individual Corrections Defendants and that as applied to the DOC itself, an inmate's shy bladder syndrome is not a recognized disability under the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities by a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA and its regulations apply to state and locally-operated correctional facilities, such as the Pennsylvania Department of Corrections. *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997), *aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).  However, "Title II of the ADA does not provide for suits against state officers in their individual capacities."  *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 169–70 (3d Cir. 2015) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)).  Accordingly, Plaintiff's ADA claims against the individual Corrections Defendants Allen, Capozza, Collings, Hawkinberry, Lewis, Rudzienski, Salvay and Wetzel are dismissed with prejudice as amendment would be futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

As to DOC's argument that shy bladder syndrome is not a recognized disability under the ADA, the court cannot make that determination at this juncture.

The ADA defines disability as "a physical or mental impairment that substantially limits

one or more major life activities of such individual; [or] a record of such an impairment." 42 U.S.C.

§ 12102(1). In response to several United States Supreme Court decisions limiting the definitional

scope of "disabled" under the ADA, Congress enacted the ADA Amendments Act of 2008

("ADAAA"). The ADAAA provides that pertinent definitions should be construed "broadly in

favor of expansive coverage." 29 C.F.R. § 1630.2(j)(1)(i), (iii)); *see also* H.R. Rep. No. 110–730

pt. 2, at 5 (2008) ("The purpose of [the ADAAA] is to restore protection for the broad range of

individuals with disabilities as originally envisioned by Congress").

Major life activities "include, but are not limited to, caring for oneself, performing manual

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,

learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

Additionally, "the operation of a major bodily function, including but not limited to, functions of

the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory,

circulatory, endocrine, and reproductive functions" also constitute major life activities. 42 U.S.C.

§ 12102(2)(B). "An individual is substantially limited in performing a major life activity if that

individual is unable to pursue that major life activity in a comparable manner 'to most people in

the general population.' " *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir.

2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Making this determination requires an

"individualized assessment" *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017)

and "[t]he term 'substantially limits' shall be construed broadly, to the maximum extent permitted

by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1).

While DOC argues that at least one other court has determined that shy bladder syndrome

is not a disability for purposes of the ADA, that case was decided using the stricter definitional

standards pre-dating the ADAAA. *Wishnefsky v. Salameh*, No. 3:15-CV-00148, 2016 WL

11480717, at *7 (W.D. Pa. Nov. 18, 2016), *report and recommendation adopted*, No. CV 15-148J, 2016 WL 7324080 (W.D. Pa. Dec. 16, 2016) (applying *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)).   Moreover, the facts underlying the case cited by DOC are not similar to those pleaded by Plaintiff here.   In *Wishnefsky*, the court found that because the plaintiff alleged that when he was unable to provide a urine sample due to his shy bladder syndrome, DOC provided him with a separate cell and gave him a hand held urinal and he was able to provide a urine sample with these accommodations, that he had not stated a qualifying disability or discrimination. *Wishnefsky v. Salameh*, No. 3:15-CV-00148, 2016 WL 11480717, at *8 (W.D. Pa. Nov. 18, 2016).   In this case, Plaintiff alleges that he was unable to provide a urine sample, was not given any similar accommodations and was disciplined for failing to provide a urine sample.

While several courts have found that shy bladder syndrome does not constitute a disability, those decisions pre-date the ADAAA. *See e.g.*, *Wishnefsky*, 2016 WL 11480717, at *7 (applying pre-amendment standard); *Rathy v. Wetzel*, No. CIV.A. 13-72, 2014 WL 4104946, at *6 (W.D. Pa. Aug. 19, 2014) (applying the "demanding standard" of defining disability pre-dating the ADAAA); *Terbush v. Massachusetts ex rel. Hampden Cty. Sheriff's Off.*, 987 F. Supp. 2d 109, 121–22 (D. Mass. 2013) (applying pre-ADAAA definitional standards); *Linkous v. CraftMaster Mfg., Inc.*, No. 7:10-CV-00107, 2012 WL 2905598, at *6 (W.D. Va. July 16, 2012) (same); *Balistrieri v. Express Drug Screening, LLC*, No. 04-C-0989, 2008 WL 906236, at *5 (E.D. Wis. Mar. 31, 2008); *Oyague v. State*, No. 98 CIV. 6721 (TPG), 2000 WL 1231406, at *3 (S.D.N.Y. Aug. 31, 2000).   There appears to be a division as to whether shy bladder syndrome constitutes a disability under the ADA amendments. *See Carey v. Arizona Dep't of Corr.*, No. CV09-8020PCT-DGC DKD, 2010 WL 148211, at *3 (D. Ariz. Jan. 12, 2010) (without analyzing the issue of

disability under the ADA, finding that "liberally construed," the plaintiff, who alleged a disability of paruresis, had "stated a claim under the ADA" in his amended complaint); *Peterson v. Wrenn*, No. 14-CV-432-LM, 2017 WL 401189, at *5 (D.N.H. Jan. 30, 2017) (refusing to apply caselaw decided pre-ADAAA law to determine whether shy bladder syndrome is a disability under the ADA); see also *Crowell v. Beeler*, No. 114CV01724AWIBAM, 2017 WL 1198579, at *7 (E.D. Cal. Mar. 31, 2017) (calling into question whether shy bladder syndrome constitutes a disability under the ADA amendments).

Because there appears to be division as whether shy bladder syndrome constitutes a disability under the ADA post-amendment, and because DOC cites to case law decided pre-amendment, DOC's argument is not persuasive and its motion to dismiss on this ground is denied without prejudice. DOC may raise this issue with the benefit of a completed record and using the applicable standard.

b. Fourteenth Amendment procedural due process

Next, Corrections Defendants argue that Plaintiff's Fourteenth Amendment procedural due process claim based on the issuance of a misconduct which resulted in the imposition of a disciplinary sanction of thirty days fails to state a claim.

Plaintiff alleges that his Fourteenth Amendment due process claim relates to the Corrections Defendants refusing to allow Plaintiff to call witnesses and use medical documentation at his disciplinary hearing related to his inability to take a urine test. Accordingly, Plaintiff asserts a procedural due process claim under the Fourteenth Amendment.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. A procedural due process claim requires a two-part analysis: (1) whether the interest asserted is protected by the

"life, liberty, or property" clause; and if so (2) what process is due to protect it. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

"A prisoner has a right to procedural due process when he is deprived of a legally cognizable liberty interest, which occurs when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Jones v. Davidson*, 666 F. App'x 143, 147 (3d Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Courts have consistently held that "discipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" under the Fourteenth Amendment. *Sandin*, 515 U.S. at 486 (30 days of disciplinary segregation did not implicate liberty interest). *See also Jones*, 666 F. App'x at 147 (30 day placement in the Restricted Housing Unit (RHU), designation as a predator, being ostracized and stigmatized, and assigned a higher security status, which affected inmate's housing, work eligibility, and school and program consideration did not implicate a liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months of disciplinary confinement did not implicate liberty interest); *Torres v. Fauver*, 292 F.3d 141, 151–52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (administrative detention for fifteen months did not implicate liberty interest).

Likewise, there is no constitutionally created interest in denying prison access to a visitor. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) ("[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause.") (quoting *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S. Ct. 864, 74 L. Ed. 2d

675 (1983)). Moreover, courts have consistently held that there is no state created interest in temporary losses to visitation privileges because it amounts to the "ordinary incidents" of prison confinement. *Henry v. Dep't of Corr.*, 131 F. App'x 847, 849 (3d Cir. 2005) (citing cases); *Griffin v. Vaughn*, 112 F.3d 703, 706–09 (3d Cir. 1997) (administrative custody for a period of fifteen months with strict limits on property, visitation, and out-of-cell activities did not implicate inmate's due process rights). *But see Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest).

Here, Plaintiff alleges he was held in disciplinary confinement for thirty days and was not permitted contact visits. This type of discipline does not present an atypical, significant deprivation that creates a liberty interest under the Fourteenth Amendment procedural due process clause and therefore Plaintiff has not stated a procedural due process claim and this claim is dismissed with prejudice as amendment would be futile. *Grayson*, 293 F.3d at 108.

      c.  <u>Eighth Amendment</u>

Next, Corrections Defendants argue that Plaintiff has failed to state a claim under the Eighth Amendment because his claim related to the prohibition on visitation with his family as a result of his inability to take a drug test and related misconducts does not implicate the "minimal civilized measure of life's necessities" guaranteed by the Eighth Amendment.

"The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.' " *Glossip v. Gross*, 576 U.S. 863, 876, 135 S. Ct. 2726, 192 L. Ed. 2d 761 (2015). It "prohibits any punishment which

violates civilized standards and concepts of humanity and decency." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted).   The Eighth Amendment does not "mandate comfortable prisons" and to the extent prison conditions "are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347, *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).

To determine whether prison officials have violated the Eighth Amendment, we apply a two-prong test: (1) the deprivation must be 'objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities'; and (2) the prison official must have been 'deliberate[ly] indifferen[t] to inmate health or safety.' " *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)).

The United States Supreme Court has previously found that a complete visitation ban for at least two years following a substance abuse violation was an acceptable standard of confinement and did not violate the Eighth Amendment. *Overton v. Bazzetta*, 539 U.S. 126, 136–37, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003) (the visitation ban "restriction undoubtedly makes the prisoner's confinement more difficult to bear" but "d [id] not, in the circumstances of th[at] case, fall below the standards mandated by the Eighth Amendment.").   While the Supreme Court in *Overton* suggested that a permanent ban applied in an arbitrary manner to a particular inmate on all visitation privileges may rise to the level of an Eighth Amendment violation, courts have consistent found that a temporary revocation of visitation privileges do not violate the Eighth Amendment. *Cordero v. Warren*, 612 F. App'x 650, 654 (3d Cir. 2015) (six-month failure to reinstate visitation with inmate's brother, followed by non-contact visits only did not violate the Eighth Amendment); *Presbury v. Wenerowicz*, 472 F. App'x 100, 101 (3d Cir. 2012) (temporary suspension of inmate's

12

wife's visitation did not violate the Eighth Amendment); *Barasky v. Shoemaker*, No. 1:20-CV-2457, 2021 WL 2255002, at *5 (M.D. Pa. June 3, 2021) (temporary visitation ban of unknown length did not violate Eighth Amendment); *Azzara v. Scism*, No. 4:CV-11-1075, 2012 WL 722342, at *7 (M.D. Pa. Mar. 1, 2012) (two year temporary loss of visitation and telephone privileges did not violate the Eighth Amendment).  *But see Shick v. Pennsylvania Dep't of Corr.*, No. 3:18-CV-253, 2019 WL 4016139, at *9 (W.D. Pa. Aug. 26, 2019) (finding under *Overton* inmate stated an Eighth Amendment claim by alleging a permanent visitation ban).

Here, Plaintiff does not allege that his visitation privileges were permanently revoked and simply alleges his privileges were revoked on a temporary basis for the amount of time he spent in the Restricted Housing Unit, amounting to approximately thirty days.  Such a restriction is not a deprivation sufficiently serious that results in the denial of the minimal civilized measure of life necessities and therefore Plaintiff has failed to state an Eighth Amendment violation.  Accordingly, Corrections Defendants' motion to dismiss is granted and Plaintiff's Eighth Amendment claim is dismissed with prejudice as amendment would be futile. *Grayson*, 293 F.3d at 108.

      d.  <u>Prison Policy</u>

While Plaintiff does not specifically set forth separate causes of action, he attempts to support his constitutional claims by arguing that Corrections Defendants violated myriad prison policies.  Prison policies and regulations do not have the force of law and if violated are not actionable under 42 U.S.C. § 1983. *Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (allegations that prison regulations are violated are not actionable).  Therefore, to the extent that Plaintiff intended to bring constitutional claims related to the Corrections Defendants' alleged violation of internal prison policies and regulations, these claims are not legally recognized under 42 U.S.C. § 1983 and are dismissed with prejudice as amendment would be futile. *Grayson*, 293

F.3d at 108.

### V.    CONCLUSION

Based on the foregoing, Corrections Defendants' motion to dismiss is granted in part and denied in part.  Corrections Defendants' motion to dismiss is denied with respect to Plaintiff's ADA claim related to DOC only and granted in all other respects.  An appropriate Order follows.


Dated: August 25, 2021                                          By the Court,
                                                                s/ Cynthia Reed Eddy
                                                                Cynthia Reed Eddy
                                                                Chief United States Magistrate Judge