IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| KENNETH J. KONIAS JR., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-CV-01530-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| PA DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**MEMORANDUM OPINION[1]**

CYNTHIA REED EDDY, United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff Kenneth J. Konias, Jr. initiated this action against Defendant Pennsylvania Department of Corrections ("DOC") alleging a claim under the American with Disabilities Act, 42 U.S.C. § 12132 ("ADA") based on his alleged inability to submit urine for a drug test while incarcerated at State Correctional Institution at Fayette ("SCI Fayette") which Plaintiff claims is because he suffers from Paruresis or "shy bladder syndrome."

Presently pending before the Court is a motion for summary judgment by DOC. ECF No. 75. The motion is fully briefed and ripe for disposition. ECF Nos. 76, 89. Plaintiff filed a brief in support of his own motion for summary judgment but did not file a separate motion. ECF No. 69. Nevertheless, the Court will construe Plaintiff as having filed a motion for summary judgment and that motion is fully briefed and ripe for consideration. ECF No. 74. Additionally, Plaintiff filed a motion to appoint counsel which the Court held in abeyance pending the disposition of the present

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

motions. ECF No. 79.  Plaintiff also filed a motion for Temporary Restraining Order. ECF No. 99.

Jurisdiction is proper pursuant to 42 U.S.C. § 1331.  For the reasons that follow, DOC's motion for summary judgment is granted.  Plaintiff's motion for summary judgment is denied and his motion to appoint counsel and motion for temporary restraining order are denied as moot.

## II.    BACKGROUND

While confined in the custody of DOC, Plaintiff has been subject to testing for drug use. Def.'s Statement of Facts ("Def.'s SMF") ECF No. 77 at ¶ 21.  DOC records show that he has been tested twenty-three (23) times while confined at SCI-Fayette.  On seventeen of those occasions, Plaintiff produced a urine sample that tested negative for drug use. *Id*. at ¶ 24.  On three occasions, Plaintiff produced a urine sample that tested positive for drug use, for which he received misconducts. *Id*. at ¶ 26.  On two occasions, Plaintiff was considered to have refused to obey the order to produce a urine sample that could be tested, for which he received misconducts. *Id*. at ¶ 27.  Plaintiff also incurred another misconduct for refusing to produce a urine sample that is not reflected in his test result history. *Id*. at ¶ 28.

On July 8, 2019, Plaintiff was issued Misconduct Report No. D335014 and charged with a violation of refusing to obey an order. *Id*. at ¶¶ 34-35.  The report states:

> On the above date and time, Inmate Konias, LK6409, was given a direct order by COI Smith to give a urine sample for testing as per DC Admin 6.3.12 Drug Interdiction manual/Inmate urinalysis testing.  At this time I/M Konias refused to provide a sample.   At approximately 1930 I/M Konias was given another opportunity to provide a urine sample.  The I/M was given the two hour time period and the amount of water per DC Admin 6.3.12.
>
> This is a Drug Related Misconduct.

*Id*. at ¶ 36.

At a misconduct hearing on July 11, 2019, Plaintiff pleaded guilty, although he stated he "has anxiety and it's hard to use the restroom in front of people." *Id*. at ¶ 37.  The Hearing Examiner

accepted Plaintiff's guilty plea and he was sanctioned with thirty (30) days Disciplinary Custody effective July 8, 2019. *Id*. at ¶ 38.

On September 6, 2020, Plaintiff was issued Misconduct Report No. D403956 and charged with a violation of refusing to obey an order. *Id*. at ¶¶ 45-46.  The report states:

> On the above date and approximate time, Inmate Konias LK6409 was given a direct order by this officer to give a urine sample for testing as per DC Admin 6.3.12 Drug Interdiction Manual/Inmate Urinalysis Testing.  At this time, Inmate Konias refused to provide a sample.  At approximately 18:30 hours, the inmate was given another opportunity to provide a urine sample.  Inmate again refused to provide a sample. Inmate was given the two-hour time period and the amount of water allowed to him per DC Admin 6.3.12.
>
> This is a drug-related misconduct.
>
> This is Inmate Konias's 4th drug-related misconduct.

*Id*. at ¶ 47.  At a misconduct hearing on September 8, 2020, Plaintiff pleaded not guilty and claimed that "he could not go to the bathroom." *Id*. at ¶ 48.  Plaintiff was found guilty and sanctioned with thirty (30) days Disciplinary Custody, with the Hearing Examiner concluding that "I/M refused to give a urine sample after I/M was given the two hour time period and water per policy." *Id*. at ¶ 49.

On October 11, 2020, Plaintiff was issued Misconduct Report No. D403783 and charged with a violation of both possession/use of a dangerous or controlled substance and refusing to obey an order. *Id*. at ¶ 51.  The report states:

> On Sunday, 10/11/20 at 0815AM, this officer along with Officer Carasella went to S Block, Delta pod, cell 1004 to collect a urine sample from I/M Konias LK6409. When present at I/M Konias cell, he was told to pee in the sample cup provided to collect a urine sample, to which I/M Konias LK6409 refused.
>
> At 1020 hours, this officer and Officer Carasella return to I/M Konias cell to collect a urine sample again which was within the 2 hour window that allowed I/M Konias to drink water so that a sample could be collected. I/M Konias LK6409 refused a second time to provide a urine sample.

This is a drug-related misconduct.

*Id*. at ¶ 52.  A hearing was scheduled on the Misconduct Report No. D403783 for October 15, 2020. *Id*. at ¶ 53.  Prior to this hearing, the Hearing Examiner contacted certain medical providers to determine whether Plaintiff was "unable to urinate due to psychological issues." *Id*. at ¶ 54.  The Hearing Examiner was advised that "there is no diagnosis or any information listed for [Plaintiff] that would keep him from urinating after [Plaintiff] was given time and water." *Id*. at ¶ 55.  At the hearing, Plaintiff pleaded not guilty, but the Hearing Examiner determined that Plaintiff "refused a direct order to provide a urine sample after two hours and water were given to [Plaintiff] per policy." *Id*. at ¶ 56.  Plaintiff was found guilty of refusing to obey an order and sanctioned with thirty days Disciplinary Custody. *Id*. at ¶ 57.  The charge of possession or use of a dangerous or controlled substance was dismissed. *Id*. at ¶ 58.

Plaintiff initiated the present action on November 27, 2019.  The only remaining claim is an ADA discrimination claim against the DOC for failing to accommodate Plaintiff for his alleged Paruresis related to drug testing.

It is undisputed that Plaintiff does not have a verified diagnosis of Paruresis or shy bladder syndrome from a medical professional.  Plaintiff maintains that he has not been evaluated for Paruresis despite having requested such an evaluation on numerous occasions.  However, the record reflects that in response to a grievance filed by Plaintiff regarding the evaluation, the DOC denied his grievance and responded that he had been evaluated by DOC psychiatrist Dr. Saveedra who informed Plaintiff that he could not diagnose him with shy bladder syndrome because Plaintiff was able to give a urine sample "more often than not." ECF 89-9 at 4.

### III.    STANDARD OF REVIEW

A *pro se* pleading is held to a less stringent standard than more formal pleadings drafted

by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). As a result, a pro se complaint under § 1983 must be construed liberally, *Hunterson v. DiSabato*, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). While *pro se* litigants are afforded this leniency, they "do not have a right to general legal advice from judges," and "courts need not provide substantive legal advice to pro se litigants" because pro se litigants must be treated "the same as any other litigant." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *U. S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner ... may be inartfully drawn and should be read "with a measure of tolerance")).

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d

100, 104 (3d Cir. 2009) (citations omitted).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48.  An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *Id.*  "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Huston*, 568 F.3d at 104.

A plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded.  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Where, as here, there are cross-motions for summary judgment, it is simply a claim by each party that it alone is entitled to summary judgment. *Canal Ins. Co. v. Sherman*, 430 F. Supp. 2d 478, 483 (E.D. Pa. 2006). Cross motions for summary judgment "do not constitute an agreement that if one is denied the other is necessarily granted, or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist." *Id.* "When confronted with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Fin. Ins. Co. of Am.*,

184 F. App'x 266, 270 (3d Cir. 2006).

### IV.    DISCUSSION

Plaintiff claims that DOC violated the ADA by not accommodating his alleged Paruresis during drug testing.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities by a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA and its regulations apply to state and locally-operated correctional facilities, such as the Pennsylvania Department of Corrections. *Yeskey v. Com. of Pa. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997), *aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206 (1998).  The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; [or] a record of such an impairment." 42 U.S.C. § 12102(1).  Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).  Additionally, "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions" also constitute major life activities. 42 U.S.C. § 12102(2)(B).  "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.' " *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).  Making this determination requires an "individualized assessment[,]" *Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017) and "[t]he term 'substantially limits' shall be construed broadly, to

7

the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1).

To state a discrimination claim under the ADA, a plaintiff must show that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (citations omitted). The burden is on the plaintiff "to establish he is a qualified person with a disability." *Stokes v. Ctr.*, No. 13-2057-GMS, 2016 WL 3344375, at *4 (D. Del. June 13, 2016) (citing *Kanofsky v. Univ. of Med. & Dentistry of New Jersey*, 50 F. App'x 546, 547 (3d Cir. 2002) (unpublished)).

Here, it is undisputed that Plaintiff has not been diagnosed with Paruresis or shy bladder syndrome by any medical professional. The record provides to the contrary: Plaintiff's treating psychiatrist would not diagnose him with Paruresis because Plaintiff was able to provide a urine sample "more often than not." Plaintiff has therefore failed to adduce sufficient evidence that a jury could conclude that he is a person with a disability under the ADA. *See McClintic v. Pennsylvania Dep't of Corr.*, No. CIV.A. 12-6642, 2013 WL 5988956, at *11 (E.D. Pa. Nov. 12, 2013) (finding that plaintiff failed to establish he suffered from the disability of Paruresis because he had not been diagnosed by a medical professional and therefore was not disabled under the ADA); *Stokes*, 2016 WL 3344375, at *4–*5 (finding that because plaintiff admitted he had not been diagnosed with the disability he alleged he was discriminated for, he could not state he qualified as "disabled" under the ADA).

To the extent Plaintiff argues that the DOC failed to diagnose him with Paruresis despite his numerous requests and that this violated the ADA, (notwithstanding that the record reflects that Plaintiff was found **not** to have Paruresis), "[t]he treatment (or lack thereof) of a prisoner's

medical condition typically does not provide a basis upon which to impose liability under the ADA." *Wenzke v. Munoz*, No. CV 18-299 (MN), 2019 WL 3304685, at *5 (D. Del. July 23, 2019), *aff'd*, 800 Fed. Appx. 76 (3d Cir. 2020) (unpublished) (quoting *McClintic*, 2013 WL 5988956, at *11 (collecting cases)).  Therefore, Plaintiff's argument that DOC failed to diagnose him with Paruresis does not state a viable cause of action under the ADA and DOC is entitled to summary judgment in their favor.

Accordingly, because there is not sufficient evidence for a reasonable jury to conclude that Plaintiff suffered from a disability under the ADA, DOC's motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.[2]  Additionally, because this decision terminates the case, Plaintiff's motion to appoint counsel and motion for temporary restraining order are denied as moot.

## V.     CONCLUSION

Based on the foregoing, DOC's motion for summary judgment ECF No. 75 is GRANTED. Plaintiff's motion for summary judgment, motion to appoint counsel and motion for temporary restraining order ECF Nos. 69, 79, 99 are DENIED.  An appropriate Order follows.


DATED this 12th day of September, 2023.


BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge

---

[2]     Plaintiff's motion also attempts to argue he is entitled to summary judgment for claims that have already been dismissed. *See* ECF No. 69 at 4, 6-7; 8. To the extent he argues that he is entitled to summary judgment for his ADA discrimination claim, as mentioned, he has failed to adduce sufficient evidence that he is a person with a disability under the ADA and his motion is denied.

9

cc:    Kenneth J. Konias, Jr.
        LK6409
        SCI Fayette
        50 Overlook Drive
        LaBelle, PA 15450

        Counsel of record
        *via CM/ECF electronic filing*